IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICHOLAS S.,[1]

        Plaintiff,

v.

**KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

Civ. No. 6:22-cv-00963-MC

OPINION AND ORDER

**MCSHANE, Judge**:

     Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security disability insurance benefits under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

     Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) finding unpersuasive the medical opinion of David Schloesser, MD, (2) improperly rejecting evidence at steps two and three, (3) improperly rejecting the subjective symptom testimony of Plaintiff, (4) improperly rejecting the lay testimony of Plaintiff's wife, and (5) relying on an incomplete hypothetical to the VE. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for benefits on June 21, 2019, alleging disability as of December 6, 2018. Tr. 167-70. Following a March 2021 hearing, ALJ Kawalek determined Plaintiff was not disabled in a May 2021 decision. Tr. 13-26. Plaintiff sought review of the hearing decision from the Appeals Council, which they denied in April 2022. Tr. 1. The ALJ's decision then became final, and now Plaintiff seeks judicial review of the ALJ's decision.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### A. Medical Opinion of David Schloesser, MD

Plaintiff first argues that the ALJ erred in finding unpersuasive the medical opinion of Dr. Schloesser. Pl.'s Br. 8, ECF No. 10. The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions – in which we assign presumptive weight based on the extent of the doctor's relationship – no longer applies." *Woods*, 32 F.4th at 787. Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are *supportability* and *consistency*." *Id.* at 791 (emphasis added) (internal quotations omitted); 20 C.F.R. § 404.1520c(a). Ultimately, Plaintiff argues the ALJ failed to properly address the factors of supportability and consistency when discussing Plaintiff's headaches. Pl.'s Br. 9.

The ALJ found that Dr. Schloesser's opinion was supported solely by "subjective allegations not seen in the remainder of the record." Tr. 23. The ALJ also found the opinion both

3 – OPINION AND ORDER

internally inconsistent and "entirely inconsistent with [Plaintiff]'s rampant activities of daily living noted in the record." *Id*.

In his treating source statement, Dr. Schloesser checked that Plaintiff had *marked* limitations in the areas of physical functioning and in understanding, remembering or applying information. Tr. 1363. However, when asked to go into detail about Plaintiff's physical functioning, Dr. Schloesser stated "we do not do physical capacity exam[s]." Tr. 1364. Dr. Schloesser then also checked the box "mild" when asked for Plaintiff's "ability to understand, remember, and apply information limited by his impairments." Tr. 1365. It was proper for the ALJ to consider these internal inconsistencies in finding Dr. Schloesser's opinion unpersuasive.

As the ALJ noted, Dr. Schloesser's opinion was also inconsistent with Plaintiff's activities of daily living. Per Plainitff's own testimony, as well as provider notes, Plaintiff regularly mountain bikes, coaches a high school soccer team, participates in soccer drills, exercises, drives, and plays with his children. *See* tr. 58-59, 60, 363, 383, 393, 437, 439, 494, 501, 508, 605, 655, 682, 1351. These physical activities are not consistent with the degree of limitation in Dr. Schloesser's opinion.

Plaintiff argues that, in addressing the consistency of Dr. Schloesser's opinion, the ALJ failed to consider the treatment notes of Dr. Gallivan. Pl.'s Br. 9. In doing so, Plaintiff asks the Court to reevaluate the evidence. However, the ALJ is responsible for resolving conflicts in medical testimony. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

//

//

4 – OPINION AND ORDER

### B. Steps Two and Three

Plaintiff next argues that the ALJ harmfully erred at steps two and three of the sequential analysis, by finding that Plaintiff's tension/migraine headaches were non-severe. Pl.'s Br. 10; *see* tr. 16.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522, Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

However, Plaintiff has not met his burden of establishing these impairments by objective medical evidence from an acceptable medical source. Symptoms are not, on their own, medically determinable impairments.[2] As 20 CFR § 404.1521 states, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." Here, Plaintiff does not point to any objective medical evidence[3] for the court to evaluate. Plaintiff

---

[2] **20 CFR § 404.1521:** Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

[3] **Objective Medical Evidence:** The signs and clinical/laboratory findings. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5.

5 – OPINION AND ORDER

points to treatment notes from two other doctors (Dr. Gallivan and Dr. Rode), all of which do not constitute signs[4] and clinical/laboratory findings[5] (objective medical evidence). There is nothing in the record pointing to objective medical evidence showing this Court how Plaintiff's headaches would severely affect his workday. Therefore, delving into step three of the disability evaluation is unnecessary, as the ALJ properly found his headache/migraines a non-severe medical impairment as it relates to work activity.[6]

### C. Plaintiff's Subjective Symptom Testimony

Plaintiff also argues that the ALJ improperly discredited his testimony regarding the nature and intensity of his limitations. Pl.'s Br. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ determines, "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). If the first step is satisfied, and the ALJ finds no evidence of malingering, the ALJ next determines the intensity and persistence of symptoms by considering "all of the available evidence from . . . medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1). "The ALJ can reject the claimant's testimony about the severity of [their] symptoms *only* by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1015 (emphasis added). A lack of objective evidence may not be the sole basis for

---

[4] "[A]natomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. §§ 404.1502(g), 416.902(g).
[5] "One or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests." 20 C.F.R. §§ 404.1502(c), 416.902(c).
[6] Further, because step two "is merely a threshold determination meant to screen out weak claims" and the ALJ moved on with the sequential analysis, any error at step two is harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49.

6 – OPINION AND ORDER

rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

> At the March 2021 hearing, Plaintiff testified he is in:
>
> constant pain now [due to his accident] that has resulted in the injury caused a necessary surgery and the surgeries where I had nerve damage that happened to my right leg, my knee all the way down to my toes. And, from there, I haven't really improved a whole lot as far as the nerves being able to regenerate so [I] have constant pain, numbness, tingling.

Tr. 49. Plaintiff also testified he tries to alleviate his pain every hour for about 10-15 minutes. Tr. 52. However, Plaintiff testified he can walk for 30 minutes, stand for 10 minutes, and sit for 40-45 minutes. Tr. 53. Plaintiff testified to his right ankle pain and how it affects various areas of his life. Tr. 49-55. However, Plaintiff reported these symptoms prior to having surgery and attending physical therapy for his ankle. Tr. 76 ("reporting improvement in severity of pain and mobility, reporting [Plaintiff]'s involvement progressing from coaching to playing soccer").

The ALJ did not reject outright Plaintiff's symptom testimony. Instead, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. Specifically, the ALJ found Plaintiff's symptom testimony was not supported by the objective medical evidence and was inconsistent with his activities of daily living. Tr. 24.

Discussion of activities of daily living may support the decision to give less weight to symptom testimony in two ways: it may illustrate a contradiction with previous testimony or it may show that activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment."). Here, the ALJ

7 – OPINION AND ORDER

found both that Plaintiff's activities of daily living conflicted with his testimony and that they demonstrated that his level of functioning is transferable to a work environment. Tr. 24. The ALJ cited to Plaintiff's activities of mountain biking to the point of injury, participating in cross-fit, exercising 3-4 times per week, coaching high school soccer, and playing with his young children and found "that at a minimum [Plaintiff] could perform work at the light level with additional nonexertional limitations." Tr. 24. Further, the ALJ gave Plaintiff the benefit of the doubt regarding his mental impairments by limiting him to simple work tasks in the RFC, even though Plaintiff has highly skilled education and work history as a nurse practitioner. Tr. 24; *see* tr. 79. After considering the extensive medical record, the ALJ made reasonable inferences and the Court must defer to those inferences. *Trevizo*, 871 F.3d at 674-75.

### D. Lay Witness Testimony

Plaintiff next argues that the ALJ improperly rejected the lay witness testimony of his wife. Pl.'s Br. 14. Plaintiff's wife provided a letter discussing her husband's impairments. Tr. 238-39. Plaintiff argues that the ALJ failed to provide specific, germane reasons for rejecting the lay witness statements.

Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511 (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

Although the ALJ committed error by failing to provide *any* reason, aside from citing to statute, as to why he did not evaluate Plaintiff's wife's statements, such error is harmless. *Molina*, 674 F.3d at 1117 (holding that an ALJ's failure to articulate a germane reason is nonetheless harmless if the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony"). Plaintiff's wife's letter largely, if not completely, mirrors Plaintiff's own testimony that was also discounted by the ALJ.

### E. Plaintiff's Residual Functional Capacity

Finally, Plaintiff argues that the ALJ failed to incorporate all of Plaintiff's limitations in the RFC and therefore, that the hypothetical posed to the Vocational Expert was incomplete. Pl.'s Br. 18.

The RFC "is the most [a claimant] can do despite [their] limitations. 20 C.F.R. § 416.945(a)(1). The RFC must take into account all of a claimant's medically determinable impairments, both severe and non-severe. 20 C.F.R. § 416.945(a)(2). However, the ALJ is only required to include those limitations that the ALJ has determined are consistent with the record as a whole. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007). An ALJ's hypothetical questions to the VE need not include limitations which the ALJ has found to be non-credible or accorded diminished evidentiary weight (as to claimant testimony or medical opinion evidence), so long as the ALJ makes specific findings explaining why the limitations were not probative, and therefore omitted. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citing *Batson*, 359 F.3d at 1195-96). Because the Court has found no harmful error in the ALJ's weighing of the evidence, the Court also finds that the ALJ did not err in crafting the RFC or in posing the hypothetical to the vocational expert.

9 – OPINION AND ORDER

**CONCLUSION**

The ALJ's decision is supported by substantial evidence and, to the extent the ALJ erred, such error was harmless. The Commissioner's final decision is therefore AFFIRMED. IT IS SO ORDERED.

DATED this 6th day of October, 2023.

/s/ Michael McShane
Michael J. McShane
United States District Judge

10 – OPINION AND ORDER